# Greene v. GuideOne Mutual Insurance Co.

C.P. of Fayette County, no. 1497 of 2002, G.D.

*William M. Radcliffe III,* for plaintiff.
*Jeffrey T. McGuire,* for defendant.

LESKINEN, *J.,* September 13, 2006—Before the court is the defendant's concise statement of matters complained of on appeal, filed August 11, 2006. This court previously entered findings of fact, conclusions of law and a verdict on July 1, 2005 after a non-jury trial on November 23, 2004. Defendant's post-trial motions were denied without opinion on June 14, 2006, which order was filed on June 22, 2006. This opinion is authored to supplement the above, and the factual scenario will not be repeated here. (The court notes that the original findings are inaccurate in referring to this as an "uninsured" motorist's claim at various points, when the reference should have been to an *"under*insured" motorist's claim.)

The concise statement sets forth six separate grounds. The first complaint challenges this court's factual findings that GuideOne's chosen legal counsel had recommended a settlement of at least $10,000, and that GuideOne had no reasonable basis for disregarding that recommendation. In this regard, the court reviewed Attorney Ferry's original letter, and found that it was more credible, and gave it more weight, than his subsequent actions and testimony.

Attorney Ferry claimed he was subsequently persuaded that the actual evaluation of the underinsured

claim should be zero. This court found that the investigation GuideOne claims it relied on was inadequate and outdated because it relied on a biased medical report that GuideOne should have known would be found to be incredible by a panel of arbitrators. While the court does not lightly find the testimony of a licensed attorney to be incredible, the court believed that Attorney Ferry's actions and testimony were affected by loyalty to, and zeal for, his client.

It is no secret that insurance defense work is a very competitive field, and that a single failure to perform to the company's expectations and demands can result in the loss of all future legal work for that company. In this regard, the court found that Attorney Ferry was placed in an extremely awkward position, and evidently concluded that the company's desired position was within the realm of reason. This court disagrees.

In that regard, this court found that GuideOne did not have a "rewardable and justifiable belief" that a zero offer was in line with its obligation to deal with its insured fairly and in good faith. This court found that the report and testimony of Attorney McCloskey was far more credible, and adopted his conclusions.

The second complaint questions the court's finding that Adjuster Wrigley was not properly trained or experienced to handle Pennsylvania underinsured motorist's claims, and that in the absence of such training or experience, that he should have been more closely supervised. This finding is fully supported by the testimony of record that this court found credible. Any testimony to the contrary was found to be not as credible.

The third complaint states that there was insufficient clear and convincing evidence to support a finding of outrageous conduct necessary to support the award of punitive damages. As noted above, the court relied on the credible testimony of Attorney McCloskey, and found that the opposing testimony was not as credible. To the extent that the award of punitive damages ($35,000) was less than one-half the difference between the zero offer and the $75,000 arbitrator's award, this court in fact gave GuideOne some credit for their argument that they relied on the opinion of a licensed medical practitioner and Attorney Ferry's revised opinion. Nevertheless, this court found it to be very clear that the refusal to make any offer was determined by the desire for profit rather than by a cool, dispassionate and thorough assessment of the actual fair value of Greene's underinsured claim.

GuideOne asserts in its fourth complaint that they had an absolute right to rely on "the independent medical exam (IME) obtained by Nationwide," particularly because Attorney Ferry advised them that they could rely on it. Essentially, GuideOne claims that they should be absolutely insulated from any claim of bad faith because they claim they relied on the independent judgment of a licensed medical practitioner and the independent judgment of a licensed legal practitioner.

First, this court did not believe GuideOne actually received independent legal advice. Attorney Ferry was not allowed to give an independent professional opinion. Instead, he was limited to a consideration of the evidence chosen in the course of GuideOne's stale and inadequate investigation. The medical evidence was obtained by

Nationwide, and they obviously did not find it credible when they paid 90 percent of their limit. The medical testimony was based on a single exam five years post-injury, and several years prior to the arbitration. Guide-One was not privy to the parameters Nationwide used in selecting the doctor, so had no basis for assuming it was actually "independent." Moreover, GuideOne never even took a sworn statement from the claimant prior to hearing. A sworn statement is taken in nearly every underinsured arbitration where substantial damages are claimed. Attorney Ferry maintained loyalty to his client, but his independence was a casualty of war.

Second, the reference to an "independent medical exam" is a deliberate misnomer, as the report was clearly selected for use solely because its conclusions were biased toward GuideOne's desired result. Clearly, a medical license does not eliminate the possibility of bias. Potential bias of a critical witness is an area that independent legal counsel would have investigated.

GuideOne cannot delegate its duty of acting fairly and in good faith, regardless of the professional licenses possessed by its carefully chosen delegates. An extreme and marginally justifiable medical opinion, combined with an extreme and marginally justifiable legal opinion obtained under pressure, do not combine to yield a reasonable, fair and good faith result. GuideOne is required by statute to exercise its own independent and well-informed judgment.

Contrary to the complaint of the defense, under all the circumstances of this case, "[r]elying on an IME" (that was clearly biased, and that should have been anticipated to be completely incredible to the prospective

fact-finder) *does* "constitute bad faith." Again, this court found the testimony and report of Attorney McCloskey to be far more credible than the defense testimony on these disputed factual questions.

The fifth complaint lodged, that GuideOne "had a reasonable basis to deny plaintiff's claim based upon the advice of counsel, the IME report, the investigation performed and the judgment of the adjuster" is covered above. There was no independent advice of counsel, the medical report was not independent, there was virtually no investigation performed and the judgment of the adjuster was as biased as the sources he chose to rely on.

The sixth and final complaint asserts that the compensatory damage award is in error because it includes $25,000 in plaintiff's attorney's fees.

The court believes that GuideOne would have paid the balance of its limits remaining [after crediting Nationwide's limit of $25,000] ($75,000), if it had acted fairly and in good faith and completed a thorough and unbiased investigation. Instead, Greene was forced to proceed by way of litigation, and secured the assistance of counsel to do so. Under the financial and emotional pressures of litigation, Greene evidently offered to settle for one-third of what he was fairly entitled to.

It is entirely offensive that GuideOne is now suggesting that they are entitled to the benefit of the offer they turned down; more particularly offensive because the compromise *counter*offer was made by their insured as a result of GuideOne's total bad faith denial of his claim. (The argument brings to mind the apocryphal story of

the man that murdered his parents and sought mercy from the court because he was an orphan.)

The simple fact remains there was no evidence that Greene would have incurred any attorney's fees at all if GuideOne had met its statutory responsibility of good faith and fair dealing.

This court believes that by passing the Unfair Insurance Practices Act, 40 P.S. §1171.1 et seq., the legislature emphatically stated that the resolution of insurance claims should not be a high-stakes "poker game" where the insurance carrier makes the rules, chooses most of the players, sets the odds and then "bluffs" their own insured into "folding" a "winning hand." By passing the Act, the legislature recognized that when there is no penalty for "cheating," insurance companies will "cheat." That is, when the maximum the company can ever be forced to pay is the amount they are already contractually obligated to pay, they will not pay what they owe voluntarily. Instead, they will "gamble" by litigating almost every case. Even if they only win one in 10, or one in 100, the company still comes out ahead.

By contrast, the individual policyholder usually has only one case, is suffering the effect of an injury, and cannot afford to gamble. The vast majority of individual policyholders cannot "cover" a loss in one case with a win in another case. Thus, the individual policyholder is under intense financial pressure to compromise even a clearly valid claim. Figuratively speaking, if the "house" cannot lose, the policyholder cannot win. The Unfair Insurance Practices Act provides the tools to cor-

rect this imbalance, but the statute only works when the court uses those tools.

This court believes that the combination of compensatory and punitive damages imposed by its verdict is the minimum amount necessary to help deter the future abuse of Pennsylvania's insurance policyholders. This court believes that counsel fees are an appropriate part of the compensatory damages to be awarded when an insurance company breaches its duty of good faith and fair dealing. However, if it is found to be inappropriate to include attorney's fees as part of the compensatory damages, this court would have added the $25,000 in attorney's fees to the punitive damages.